**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

AMADOU W. DIALLO,

      Petitioner,

v.

ALBERTO GONZALES, Attorney
General of the United States,

      Respondent.

No. 05-9538
(No. A97-622-820)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

Amadou W. Diallo seeks review of a final order of removal issued by the

Board of Immigration Appeals ("BIA"), which affirmed a decision by an

immigration judge ("IJ") denying his requests for asylum, restriction on removal,[1]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Although the parties and the agency refer to "withholding of removal,"

(continued...)

and relief under the Convention Against Torture ("CAT"). We **GRANT** the petition for review, **VACATE** the final order of removal, and **REMAND** for further proceedings.

## I

Diallo is a native and citizen of Mauritania, a country in northwestern Africa. He was born in 1970 in the Brakna region of southern Mauritania near the Senegal River, which runs along the border between Mauritania and Senegal. In 1989, the politically dominant White Moors, who are of Arab and Berber descent, assisted by the Black Moors, whom the White Moors historically have enslaved, expelled from Mauritania approximately 75,000 people of various African ancestries. In the process, many non-Moorish Mauritanians were assaulted, imprisoned, killed, or lost their property.

Diallo is a member of the largest non-Moor ethnic group in Mauritania, known as the Fulani or Halpulaar. Diallo claims that, as part of the ethnic conflict in 1989, Moorish soldiers came to his house and arrested his father and sister. While trying to help his sister, he was beaten unconscious and his teeth were knocked out. He awoke in a military camp where he was detained, beaten

---

[1](...continued)
"restriction on removal" is the term generally applied to requests filed after the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. See Yan v. Gonzales, 438 F.3d 1249, 1251 n.1 (10th Cir. 2006).

daily, and forced to work. He escaped to Senegal in September 1989 and lived there until 2002. He was able to locate his mother in 1995, but he never saw his father or sister again and believes they were killed.

In Senegal, Diallo met a Senegalese businessman, Amadou Ba, who arranged for Diallo to board a plane that Diallo thought was headed for Paris. However, the plane landed in New York City, where Diallo was admitted into the country without a valid passport or visa. He made his way to Colorado and, after being served a notice to appear before an IJ, he applied for asylum, restriction on removal, and relief under the CAT.

In ruling on Diallo's claims, the IJ incorrectly characterized Diallo as a Black Moor, one of the persecuting ethnic groups in Mauritania, rather than as a Fulani, one of the persecuted groups. Nevertheless, the IJ found that his claim of past persecution was credible. However, the IJ also found that, because Diallo had firmly resettled in Senegal prior to arriving in the United States, he was no longer a refugee and therefore ineligible for asylum. In the alternative, the IJ found that conditions in Mauritania have fundamentally changed such that he no longer has a well-founded fear of future persecution. On these grounds, the IJ denied the application for asylum and restriction on removal. He also denied Diallo's request for relief under the CAT. He ordered Diallo removed to Senegal or, in the alternative, to Mauritania. The BIA disagreed with the IJ's conclusion

that Diallo had firmly resettled in Senegal. Specifically, the BIA found that because of Diallo's refugee status, the only work he could find in Senegal was herding cattle in exchange for food, and that the Senegalese government would not permit him to register his marriage. Nonetheless, the BIA affirmed the IJ's decision on the ground of changed country conditions in Mauritania. This appeal followed.[2]

## II

The BIA's decision was written by one board member and contains the BIA's reasoning. Therefore, it is the type of decision described in 8 C.F.R. § 1003.1(e)(5) rather than the summary affirmance described in 8 C.F.R. § 1003.1(e)(4). See generally Uanreroro v. Gonzales, ___ F.3d ___, No. 04-9537, 2006 WL 895240, at *5 (10th Cir. Apr. 6, 2006) (explaining the nature of a decision issued under 8 C.F.R. § 1003.1(e)(5) and the scope of our review). Accordingly, to the extent it provides an adequate basis for meaningful review, we review the BIA's decision, not the IJ's decision. See Cruz-Funez v. Gonzales, 406 F.3d 1187, 1190-91 (10th Cir. 2005). If the BIA's decision is lacking, we may look to the IJ's decision if it provides an adequate basis for meaningful

---

[2] Diallo did not challenge the denial of his request for restriction on removal or relief under the CAT before the BIA and he has not raised these issues before this court. He has therefore waived the issues. Tulengkey v. Gonzales, 425 F.3d 1277, 1279 n.1 (10th Cir. 2005).

-4-

review.  Id. at 1191.  Although largely directed at the IJ's decision, the parties' arguments are equally applicable to the BIA's decision.  The IJ's decision does not assist in our review because he reached his findings under the clearly erroneous belief that Diallo was a Black Moor.

On appeal, we have a "duty . . . to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." Elzour v. Ashcroft, 378 F.3d 1143, 1150 (10th Cir. 2004). "[O]ur review is confined to the reasons given by the [agency], and we will not independently search the record for alternative bases to affirm." Id.  We may reverse the agency's factual findings only if the record evidence as a whole would compel any reasonable fact-finder to reach a different conclusion.

To be eligible for a discretionary grant of asylum, an alien must first show that he is a "refugee." Wiransane v. Ashcroft, 366 F.3d 889, 893 (10th Cir. 2004).  To establish refugee status, the applicant must demonstrate that he has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  Although persecution is not defined in the regulations, we have characterized it as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and

liberty." Woldemeskel v. INS, 257 F.3d 1185, 1188 (10th Cir. 2001) (quotation omitted).

If an asylum applicant has suffered past persecution, he is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). This presumption can be rebutted if a preponderance of the evidence shows that there has been a fundamental change of circumstances in the applicant's country such that the fear of future persecution no longer is well-founded. 8 C.F.R. § 208.13(b)(1)(i)(A); Woldemeskel, 257 F.3d at 1189. "Fear of persecution is well-founded if it is subjectively genuine and objectively reasonable." Nazaraghaie v. INS, 102 F.3d 460, 462 (1996). Objective reasonableness involves a "reasonable possibility" of suffering persecution on return to the country of persecution. See id. "The Supreme Court has suggested that a one in ten chance may constitute a 'reasonable possibility' of persecution." Id. (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987)).

The BIA cited to 8 U.S.C. § 208.13(b)(1)(i)(A) in connection with its finding that Diallo no longer has a well-founded fear of future persecution. As such, the BIA implicitly found that (i) Diallo had established past persecution, (ii) his fear of future persecution was related to his past persecution, (iii) he was entitled to and was given the presumption of a well-founded fear of future persecution, and (iv) the agency rebutted that presumption. We therefore review

the BIA's finding that the agency rebutted the presumption that Diallo has a well-founded fear of future persecution.

Diallo first takes issue with the IJ's finding that he is a Black Moor rather than a Fulani, and argues that this finding implicates the decision of whether he has a well-founded fear of future persecution. The government concedes that the IJ's finding was clearly erroneous. Further, despite the inexcusable error committed by the IJ – namely, classifying Diallo as a member of the persecuting ethnic group as opposed to the persecuted group – the BIA did not explicitly acknowledge Diallo's correct ethnicity in its decision. Instead, the BIA stated that, in view of its conclusion that country conditions had changed, all of the IJ's factual errors were harmless and immaterial. The error is not harmless or immaterial. Diallo's ethnicity was the very basis of his past persecution. Nevertheless, it seems that the BIA considered Diallo's proper ethnicity when making its finding that country conditions have changed.

Of greater concern is that the BIA did not perform an individualized assessment of the record evidence and ignored evidence that supports Diallo's fear of future persecution. The BIA wrote only two sentences in support of its finding that country conditions in Mauritania have changed. The first sentence relies on a 2001 report by the U.S. Committee on Refugees ("2001 USCR Report") for the proposition that "conditions in Mauritania have improved

significantly from the preceding turbulent periods, as evidenced by the 30,000 to 60,000 refugees who returned there in recent years." The second sentence relies on the finding in the Department of State's 2003 Country Report on Human Rights Practices for Mauritania ("2003 Country Report") that "while the recovery of land and identity cards remain unresolved issues for some Mauritanians, '[m]any returnees received their original homes, some property, and all or a portion of their land[.]'"

We have indicated that "a State Department Report can constitute substantial evidence supporting the IJ's decision," Yuk v. Ashcroft, 355 F.3d 1222, 1236 (10th Cir. 2004), but we have "cautioned that use of such official report[s] does not substitute for an analysis of the facts of each applicant's individual circumstances. Uncontroverted facts may be inapplicable to or of limited probative value in individual cases and the Board must remain open to this possibility." Krastev v. INS, 292 F.3d 1268, 1277 (10th Cir. 2002) (quotation omitted). The two statements on which the BIA relied concern general country conditions and are of limited value in determining whether conditions have changed in Diallo's region. It is unclear from these statements how many of the refugees returned to Diallo's region and how many were able to obtain their property or identity papers.

Not only did the BIA rely exclusively on general statements with little probative value, it overlooked evidence in the record concerning Diallo's individual circumstances that is favorable to him. The 2001 USCR Report states that local police have been accused of beating returnees in the southern region of Mauritania. This is particularly important because Diallo is from the southern region, and his claim of past persecution is based largely on physical abuse by the government. The 2003 Country Report states that "[t]here were a number of reports that some government officials misappropriated land under the land reform system, confiscating the land of southern ethnic groups . . . and distributing it to their friends and family." Further, anecdotal evidence is presented that no more than twenty percent of those intended to benefit under the land reform program – returnees and victims of desertification – had received land. Finally, the record indicates that if Diallo is eligible to obtain any land under the land reform program, he faces significant challenges based on his ethnicity. All this is in addition to the problem the BIA acknowledged, namely, the difficulty returnees face in recovering land titles.

In relying on only general statements as indicators of changed country conditions and ignoring evidence more specifically applicable to Diallo, the BIA failed to conduct the individualized review that Krastev requires. Accordingly,

we conclude that substantial evidence does not support the BIA's decision, and the matter must be remanded for further proceedings.

### III

We **GRANT** the petition for review, **VACATE** the final order of removal, and **REMAND** for further consideration. The stay order entered in this case is lifted.

Entered for the Court


Carlos F. Lucero
Circuit Judge