**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

MAMOUDOU BA,

Petitioner,

v.

No. 07-9575

MICHAEL B. MUKASEY,
United States Attorney General,

Respondent.

---

## APPEAL FROM THE BOARD OF IMMIGRATION APPEALS
## PETITION FOR REVIEW

---

Submitted on the briefs:[*]

Sharon A. Healey, Seattle, Washington, for Petitioner.

Emily Anne Radford, Assistant Director, Margaret A. O'Donnell, Trial Attorney, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Mamoudou Ba petitions this court for review of an order of the Board of Immigration Appeals (BIA) upholding the immigration judge (IJ)'s denial of his applications for asylum, restriction on removal, and protection under the Convention Against Torture (CAT). The BIA determined that Mr. Ba failed to overcome the government's showing that country conditions have changed so significantly in his country of origin, Mauritania, that he no longer has a well-founded fear of future persecution if returned there. His arguments to the contrary rest on two misconceptions: that a showing of possible future discrimination is sufficient to establish future persecution; and that the failure to remedy past persecution constitutes future persecution. We conclude that the BIA conducted a sufficiently individualized review of the effect of changed country conditions on Mr. Ba's case, and that its decision was supported by substantial evidence. We therefore deny the petition for review.

## BACKGROUND

Mr. Ba is a citizen and native of the West African country of Mauritania. He entered this country in June 2003, bearing a Senegalese passport containing his photograph but issued under a different name. On March 17, 2004, the Immigration and Naturalization Service issued him a Notice to Appear, charging him with being an alien present in the United States who had not been admitted or

paroled after inspection by an Immigration Officer. Mr. Ba admitted the allegations contained in the Notice.

### 1. Ethnic Violence in Mauritania

Mauritania is a highly-centralized Islamic republic with a long history of ethnic and racial tensions. The country's population is essentially divided into three ethnic groups: the politically-dominant "White Moors" of Arab and Berber ancestry; the indigenous African "Black Moors," historically enslaved by the White Moors; and Sub-Saharan Africans belonging to a variety of ethnic groups including the Halpulaar/Fulani, Tukulor, Soninke, and Wolof groups. Mr. Ba is a black African associated with the Halpulaar/Fulani group.

Mauritania's Sub-Saharan African population has historically been centered in the south of the country, in the Senegal River region. In 1989, tensions among Mauritania's various ethnic groups erupted in a violent crisis associated, externally, with deteriorated relations between Mauritania and its neighbor Senegal, and internally, with increasing demands for greater recognition by the country's Sub-Saharan African population. The White Moors, working in alliance with the Black Moors, attempted to "cleanse" Mauritania of its Sub-Saharan African population. In the ensuing years, Mauritania expelled some 75,000 people of African ancestry, forcing many across the river into Senegal. Many Mauritanians of black African descent were also killed, assaulted, stripped of their property, and/or imprisoned.

## 2. Mr. Ba's Testimony

At his hearing before the IJ on May 4, 2006, Mr. Ba described his experiences as a victim of this violent upheaval. He testified that he was born in Mauritania and worked there with his father making bricks until 1989. In the fall of that year, policemen wearing military uniforms came and arrested him and his family. The policemen beat him and took everyone from his house, including his parents, his wife, and his sister. They shot and killed his father.

Mr. Ba testified that he spent the next year in a detention camp. His captors were White Moors. He was separated from his wife and children in the camp and beaten every day.

At the end of the year-long incarceration, the policemen took him to the Senegal River and forced him to cross by canoe into Senegal. There he was reunited with his family at the Thilogne refugee camp. He remained in the refugee camp for five years, selling bricks, then departed for Senegal's capital city, Dakar. In Dakar he worked as an itinerant clothing salesman until he left for the United States.

## 3. Agency Decisions

The IJ rejected Mr. Ba's application, denied all relief, and ordered him removed to Mauritania or alternatively, to Senegal. The IJ identified a number of reasons for his decision. First, he did not find Mr. Ba to be a credible witness due to a number of discrepancies between his testimony and his asylum application.

Second, he found that Mr. Ba had failed to demonstrate that his asylum application was filed within one year of his arrival in the United States. Third, country conditions had changed in Mauritania so significantly that even if Mr. Ba had demonstrated past persecution, he would not be eligible for asylum because he had no well-founded fear of future persecution. Finally, the evidence showed that Mr. Ba had been firmly resettled in Senegal.

Mr. Ba appealed to the BIA. In a reasoned decision authored by one Board member, *see* 8 C.F.R. § 1003.1(e)(5), the BIA agreed with the IJ that "even if [Mr. Ba] was credible and established past persecution entitling him to the presumption of a well-founded fear of future persecution, his well-founded fear of future persecution has been rebutted by changed country conditions in Mauritania." Admin. R. at 2. In light of this disposition, the BIA did not find it necessary to consider the other reasons for denying relief on which the IJ relied.

## ANALYSIS

### 1. Asylum Standard

To obtain asylum, an alien must prove, first, that he is a refugee as defined in 8 U.S.C. § 1101(a)(42)(A), and then persuade the Attorney General to exercise his discretion and grant relief under 8 U.S.C. § 1158(b). *See Yuk v. Ashcroft*, 355 F.3d 1222, 1232-33 (10th Cir. 2004). The asylum statute defines a "refugee" as any person outside his country of nationality "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . .of the protection of, that

country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). The BIA denied relief at the first stage, finding that Mr. Ba was not a refugee. It therefore did not reach the second, discretionary stage of the analysis.

### 2. Past Persecution and Well-Founded Fear of Future Persecution

In its decision, the BIA assumed that Mr. Ba's testimony demonstrated that he had suffered past persecution. Although regulations of the Department of Homeland Security (DHS) provide that "[a]n applicant who has been found to have established . . .past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim," they also provide that "[t]hat presumption may be rebutted if an . . .immigration judge [finds by a preponderance of the evidence that] . . . [t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality. . . ." 8 C.F.R. § 208.13(b)(1)(i)(A); *see also* 8 C.F.R. § 1208.13(b)(1)(i)(A).

The BIA found that DHS had rebutted the presumption of future persecution by showing that country conditions have changed in Mauritania. Mr. Ba contends that the BIA relied excessively on State Department reports concerning changed country conditions in Mauritania generally and failed to conduct an analysis of his individual circumstances.

### 3.  Changed Country Conditions

In its decision, the BIA made the following findings concerning the change
in country conditions in Mauritania as they applied to Mr. Ba's case:

> [P]ersuasive country conditions evidence in the record reflects a
> significant easing of ethnic tensions, with most Afro-Mauritanian
> refugees having been successfully repatriated with the cooperation of
> the Mauritanian Government . . . . Indeed, the evidence of country
> conditions [in] Mauritania indicates that of the approximately 75,000
> refugees who were expelled by the Government or fled to Senegal,
> such as [Mr. Ba], during the 1989-91 crisis, the U.N. High
> Commissioner for Refugees (UNHCR) has documented that only
> approximately 15,000 to 20,000 remain in Senegal. . . . Moreover,
> the UNHCR indicated that most of the returnees have recovered their
> land and identity papers . . . These developments lead us to conclude
> that [Mr. Ba] no longer has a well-founded fear of persecution in
> Mauritania.

Admin. R. at 2-3.  The BIA further addressed Mr. Ba's claim that a person who he

knows in Senegal heard Mr. Ba's name broadcast on Mauritanian radio in 1995,

in a list of people who the police were looking for and who would be killed if

they returned to Mauritania:

> Although [he] testified that someone informed him that his name was
> broadcasted on the radio in Mauritania because the police were
> looking for him, we find that this information is too attenuated to
> establish a present basis for a well-founded fear of persecution
> because the information came from a third party and [Mr. Ba] did not
> establish the circumstances surrounding this alleged broadcast.

*Id.* at 3.

Whether the materials of record rebutted the presumptive inference from

past to future persecution is a question of fact that we review for substantial

-7-

evidence. *Marcu v. INS*, 147 F.3d 1078, 1080-81 (9th Cir. 1998). That means we cannot reverse the determination of the BIA unless the record compels us to conclude that it was wrong. *Id.*; *see also Nazaraghaie v. INS*, 102 F.3d 460, 463 n. 2 (10th Cir. 1996) (noting deferential standard applies even if court is reviewing application of statutory standard to established subsidiary facts).

In reaching its conclusions concerning current conditions in Mauritania, the BIA relied on the background information submitted by Mr. Ba, including State Department country reports for 2004 and 2005. Country reports can constitute substantial evidence to support such a determination, *see Yuk*, 355 F.3d at 1236, though it is important to keep in mind that their inherently broad statements may not always address the specific concerns that are salient in a particular case, *see Krastev v. INS*, 292 F.3d 1268, 1276-77 (10th Cir. 2002).

The BIA adequately addressed the specific concerns salient to Mr. Ba's case. The changed country conditions it found were directly salient to the forms of past persecution that he endured in the 1980s and early 1990s: imprisonment; death of a loved one; loss of possessions and livelihood; and enforced exile. The evidence relied upon by the BIA shows that the crisis that prompted the exile and detention of African Mauritanians like Mr. Ba has ended. To be sure, Mauritania still has broad social and political shortcomings in need of improvement. But these do not suggest a likelihood that Mr. Ba will be *persecuted. See Woldemeskel v. INS*, 257 F.3d 1185, 1190 (10th Cir. 2001) (stating adequate

showing of change in country conditions shifts burden back to alien to show she has well-founded fear of persecution).

Mr. Ba cites an unpublished case, *Diallo v. Gonzales*, 178 F.App'x 833 (10th Cir. 2006), in support of his argument that the BIA's failure to address the likelihood of future persecution under his particular circumstances requires us to vacate the BIA's decision. We do not find *Diallo* persuasive here. In that case, also involving a Fulani-speaking Mauritanian, a panel of this court determined that the evidence on which the BIA relied failed to rebut the presumption of future persecution because (1) there was no specific evidence that showed how many refugees had returned to the petitioner's region and were able to obtain their property or identity papers, and (2) evidence showed that officials in the southern region of Mauritania continued beating refugees and confiscating land belonging to southern ethnic groups under the land reform system, and that refugees encountered difficulty in regaining their lands. *Id.* at 837.

Mr. Ba provides no reference to the country reports in his case, which are chronologically later than those cited in *Diallo*, to substantiate *Diallo*'s concern that returnees continue to be beaten by police. While there is evidence that some refugees returning to Mauritania have had difficulty getting back their land or obtaining identity papers, he fails to point to evidence of mistreatment of returning refugees that would amount to *persecution*. Persecution is the "infliction of suffering or harm . . . in a way regarded as offensive and

[involving] more than just restrictions or threats to life and liberty." *Yuk*, 355 F.3d at 1233 (quotation marks omitted). "Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution' within the meaning of the Act." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995).

Mr. Ba argues that the government has been unwilling to issue identity cards to some returning refugees. While he argues that lack of an identity card can curtail one's ability to travel freely throughout the country, he fails to discuss whether this unwillingness to grant identity cards to all returning black African Mauritanians has resulted in social or economic consequences so severe for those returnees that it should be considered persecution. *Cf. Vicente-Elias v. Mukasey*, ___F.3d___, 2008 WL 2699399, at *2 (10th Cir. July 11, 2008) (stating economic persecution may be shown where deprivation necessarily threatens life or freedom or where severe economic disadvantage has been imposed on alien). He fails to show that he owns land that is likely to be misappropriated by corrupt administrators of the land reform system.

His argument that the Southern region of Mauritania "historically has been beset by ethnic tensions, banditry and drought," Aplt. Br. at 16, similarly falls short of demonstrating that returnees to Mauritania are likely to experience persecution by the government or by groups that it is unable or unwilling to control. *See Krastev*, 292 F.3d at 1276. Finally, the fact that some or most of the

-10-

returnees have experienced difficulty in regaining their lands that were lost during past persecution does not demonstrate a likelihood of future persecution. Mr. Ba fails to show that the government's failure to insure that he receives reparations is the equivalent of persecuting him.[1]

In light of the facts in this record, we cannot say that we are compelled to conclude that the BIA erred in finding that the government had rebutted the presumption of future persecution raised by Mr. Ba's adverse experiences during the Mauritanian crisis of the late 1980s and early 1990s. Under the applicable standard of review, we must affirm that finding. We also affirm the BIA's finding that the incident in which his name was read over the radio was too attenuated to establish the basis for a well-founded fear of persecution.

Mr. Ba does not make a specific argument in support of his claim for restriction on removal. His failure to satisfy the burden of proof for asylum, however, necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal. *See Yuk*, 355 F.3d at 1236. We therefore also affirm the BIA's denial of restriction on removal.

---

[1] In his reply brief, Mr. Ba cites another unpublished Tenth Circuit case, *Ba v. Gonzales*, 222 F.App'x 702 (10th Cir. 2007), in which a panel reached a similar result to that in *Diallo*. We find *Ba* unpersuasive here for the same reasons that *Diallo* fails to persuade us.

**4. CAT Claim**

The BIA denied Mr. Ba's CAT claim because "there is no evidence that the Mauritanian Government would torture him or be acquiescent in his torture." Admin. R. at 3. Mr. Ba asserts that the background materials he provided show that the Mauritanian government tortured or permitted torture of its perceived enemies during the 1989-1991 crisis, and continues to use torture to silence or punish its perceived enemies. The tortures he describes were meted out to suspected participants in a coup attempt. *See* Admin. R. at 210-11. There is no evidence that Mr. Ba would be tortured as a suspected plotter against the government if returned to Mauritania. He has failed to point to any evidence that he faces torture if returned there. We affirm the BIA's finding concerning his torture claim.

## CONCLUSION

The petition for review is DENIED.