**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KULWINDER SINGH RAJU,

      Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

      Respondent.

No. 08-9562
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

_____

Kulwinder Singh Raju petitions for review of a Board of Immigration

Appeals (BIA) decision affirming an immigration judge's (IJ) denial of asylum,

restriction on removal, and protection under the Convention Against Torture

(CAT). Mr. Raju contends the IJ improperly discredited his testimony based on

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

incidental inconsistencies that did not go to the heart of his claims. We reject Mr. Raju's contentions and deny the petition for review.

## I

Mr. Raju came to this country as a native and citizen of India. He entered on January 28, 2002, without proper admission or parole, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and was placed in removal proceedings. After conceding his removability, Mr. Raju requested asylum, restriction on removal, and protection under the CAT. He claimed to have been persecuted on account of the imputed political opinion of Sikh militants. At his removal hearing, Mr. Raju explained that he was from the village of Dhada Kama, in the Punjab Province of India. He testified that on October 28, 2001, three armed members of the Sikh terrorist group "Commando Force" came to his home demanding food and quarter. The militants threatened to kill him and his family if they refused to cooperate, so he complied with their demands.

The next day, after the militants left, Mr. Raju was arrested by the police and accused of being a terrorist. He was taken to a "torture room," Admin. R. at 152, where four police officers forced him to undress to his underwear. He was then tied at the legs upside-down and beaten throughout the night with a belt and metal-tipped staff. He bled and lost consciousness during the interrogation, and afterwards, was dipped in cold water. The next day, he was released when his mother and village-leader paid the police 90,000 rupees.

Mr. Raju recuperated at home but was bedridden for fourteen days. He was medicated, had difficulty walking, and underwent an operation to drain fluid in his back. Then, on November 15, 2001, the militants returned. The same three individuals again demanded food and shelter, and again threatened Mr. Raju with his life. Again, he complied with their demands, and the next day, after the militants left, the police returned as well. This time, however, Mr. Raju's mother told him to hide. He heeded her warning and fled to a friend's house some twenty miles away. From there, he made arrangements to fly from Delhi to Mexico and, ultimately, the United States.

Upon hearing this testimony, the IJ indicated he would have been inclined to grant asylum had it not been for two inconsistencies in Mr. Raju's testimony. First, the IJ found troubling Mr. Raju's inconsistent statements concerning his number of siblings: he first testified that he had only one brother who already had been granted asylum, but on cross-examination revealed that he actually had five siblings. Second, Mr. Raju claimed to have a significant scar on his back from his operation, but when he removed his clothing, there were no signs of injury. Additionally, the IJ noted Mr. Raju gave varying testimony concerning his path to the United States. Given these inconsistencies, the IJ found Mr. Raju incredible, denied relief, and ordered him removed to India.

Mr. Raju appealed to the BIA, arguing that the adverse credibility finding was improper because these inconsistencies concerned incidental matters that did

not go to the heart of his claims. He also asserted he should have been granted relief because his brother had been granted asylum. The BIA rejected these contentions and affirmed the IJ's decision. Mr. Raju now presses his credibility argument in this court.

## II

"To qualify for asylum, an alien must show that he has suffered past persecution or has 'a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (quoting 8 U.S.C. § 1101(a)(42)(A)) (further quotation omitted). "To qualify for restriction on removal, an alien must demonstrate that his 'life or freedom would be threatened in the [the proposed country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1231(b)(3)(A)). An alien seeking protection under the CAT must show "'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* (quoting 8 C.F.R. § 1208.16(c)(2)).

Where, as here, "a single BIA member issues a brief order, affirming . . . the IJ's order under [8 C.F.R. § 1003.1](e)(5)," we "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (quotations

omitted).  "The agency's findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)) (further quotation omitted).[1]  Factual determinations, including those concerning credibility, must be "supported by reasonable, substantial, and probative evidence considering the record as a whole."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (quotation omitted).  Because an alien's credible testimony alone may support an application for relief, *Solomon v. Gonzales*, 454 F.3d 1160, 1165 (10th Cir. 2006); 8 C.F.R. § 208.13(a), an IJ must give "specific, cogent" reasons for an adverse credibility finding, *Ismaiel*, 516 F.3d at 1205 (quotation omitted).

In 2005, the REAL ID Act amended the standard for assessing an applicant's credibility.  Under the amended standard, an adverse credibility determination may be based on "any inaccuracies or falsehoods in [an applicant's] statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor*."  8 U.S.C. §§ 1158(b)(1)(B)(iii) and 1229a(c)(4)(C) (emphasis added).  Acknowledging these provisions, Mr. Raju contends they are inapplicable because he sought relief

---

[1]     Our authority to review credibility findings was further circumscribed by the REAL ID Act of 2005, *see* 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C), and 1231(b)(3), but these amendments are inapplicable to this pre-REAL ID Act case.  *See Ismaiel*, 516 F.3d at 1205 n.5.

prior to passage of the REAL ID Act on May 11, 2005. Thus, he concludes by default that only inconsistencies going to the heart of his claims are relevant to assessing credibility.

This argument has no merit. Although Mr. Raju filed his application before the REAL ID Act, this court recognized, even before passage of the REAL ID Act, that the significance of an inconsistency or omission is better gauged by its context in each case than its relation to the "heart" of a claim. *See Ismaiel*, 516 F.3d at 1205-06. Indeed, in *Ismaiel*, another pre-REAL ID Act case, we specifically noted that while other courts distinguished between false statements and omissions going to the "heart of the asylum claim" and those involving "incidental matters," we did not adopt that approach. *Id.* at 1205. Instead, we preferred to be guided by common sense, evaluating the specific circumstances of each case. *Id.* at 1205-06.

Thus, in *Ismaiel*, we sustained an adverse credibility finding where an alien testified to two accounts of alleged torture that were omitted from his asylum application. *Id.* at 1201-03. We reasoned that it would "defy common sense" to omit the alleged torture from the application, which was prepared with counsel years after the trauma purportedly occurred. *Id.* at 1205-06. But in *Sarr*, we rejected an adverse credibility finding "based upon two inconsistencies that, if they existed at all, were too minor to constitute substantial evidence." 474 F.3d at 796. The first was the alien's production of his birth-certificate despite

testimony that all his family's documentation had been destroyed; the second was the alien's momentary misstatement of the year his mother died. *Id.* at 793-95. We recognized the former was precipitated by a specific question about the alien's birth-certificate as compared to a general question concerning his family's paperwork. *Id.* at 794. We recognized the latter was a minor, quickly-corrected discrepancy that "made no difference to the strength or plausibility of [the alien's] story." *Id.* at 796.

Looking at the context of the inconsistencies in this case, we have little difficulty sustaining the agency's credibility finding. The first inconsistency noted by the IJ related to Mr. Raju's number of siblings. He initially stated he had one brother and, when asked whether he had any other siblings, replied, "No." Admin. R. at 145. Yet on cross-examination, he stated he was one of three brothers and three sisters:

Q: How many siblings do you have?

A: We were three brothers and three sisters.

Q: You were, what are you now?

A: We are three brothers and three sisters, the third brother I don't know his whereabouts, he ran away a long time ago.

*Id.* at 163.

Mr. Raju expanded on his testimony, saying he had one brother who lived in the United States. Then on redirect, he attempted to explain the contradiction,

saying he thought his attorney asked whether he had any other siblings living in the United States. The IJ rejected this explanation because Mr. Raju had been asked a simple question, the answer to which he ought to have known. The BIA also found the inconsistency significant because mistreatment of family members is a factor in determining the likelihood of future persecution. Mr. Raju seems to argue the BIA ignored his claim of past persecution, but the Board clearly rejected this claim and was explaining the significance of the inconsistency with regard to the possibility of future persecution. And although Mr. Raju insists this inconsistency was insufficient to undermine his credibility, he ignores the other inconsistencies in his testimony.

Mr. Raju also indicated he still had a significant scar on his back from his operation, but when he showed his back to the IJ, there were no scars:

Q: You said an operation, what kind of operation did you have?

A: All the pus[] that had developed in the back, they drained it all.

Q: Do you have a significant scar from that now?

A: Yes.

Q: If you were to show it to the Court and the Government lawyer is it on a part of the body that would cause you embarrassment?

A: No, it wouldn't embarrass me.

Q: If you could please show the Government lawyer and the Judge the scar as a result of this injury.

Q: And let the record reflect that Mr. [Raju] is showing the Government lawyer.

A: There are no scars on the back.

Q: Do you understand the Court, the Court said there are no scars on the back. Did you have scars on the back and they disappeared?

A. Yes.

*Id.* at 155-56.

The IJ discredited this testimony because he believed the alleged injuries would have left scars. Although the IJ cited his personal opinion, *see Ismaiel*, 516 F.3d at 1205 ("An IJ's finding that an applicant's testimony is implausible may not be based on speculation, conjecture, or unsupported personal opinion.") (quotation omitted), we review the BIA's decision as the final order of removal and "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance," *Sidabutar*, 503 F.3d at 1123 (quotation omitted). The BIA did not rely on the IJ's rationale, but instead affirmed on account of the contradiction between Mr. Raju's testimony that he presently had a significant scar on his back and the IJ's observation to the contrary. Hence, the BIA provided a proper basis for discrediting this portion of Mr. Raju's testimony.

Nevertheless, Mr. Raju insists there was "no direct testimony" that he "had scarring on his back that would persist over time." Aplt. Br. at 22. He asserts he testified only "generally that . . . there was some scarring on his back," and thus,

"[i]f the scarring was minor[,] it is not surprising that it would have faded or be unobservable unless closely examined." Reply Br. at 9. These arguments mischaracterize the record. Mr. Raju was asked if he had – at that time – a "significant scar." He said yes. But when he lifted his shirt, there were no signs of injury to his back. At that point, he changed his testimony to indicate the scar had disappeared. Yet prior to showing where the purported scar would be, he never stated it was minor, faded, or had disappeared. Although he references scars on his hip and head, it was the absence of any scars on his back that contradicted his testimony, and the BIA recognized this.

The final inconsistency noted by the IJ pertained to the countries Mr. Raju traveled through en route to the United States.[2] Mr. Raju initially testified that he traveled through Equador, Guatemala, and Mexico on his way from India to the United States. This testimony was inconsistent with his asylum application, which stated he traveled only through Mexico on his way to the United States. When asked to explain the omission, Mr. Raju stated:

A: Really scared when I first came and I did not know anything about it, so after that I became to know.

---

[2] Although the BIA did not specifically reference this portion of Mr. Raju's testimony, it found "that the inconsistencies cited by the Immigration Judge are present in the record, that they are adequately significant to support an adverse credibility determination, and that [Mr. Raju] has not adequately explained them." Admin. R. at 2. Because the BIA relied on the inconsistencies cited by the IJ, this inconsistency is subject to our review.

Q: Can you restate that answer?

A: When I came I was just thrown in a room, I had no idea what to say, and I was really scared, when I saw the police here I was really scared that they were like the police back in India.

Q: What country were you in when you were locked in this room?

A: Equador.

*Id.* at 146-47.

Mr. Raju's attorney questioned him again on his path to the United States:

Q: Where did you leave?

A: From Delhi.

Q: And from Delhi to where did the plane go?

A: I didn't know at that time, they just put me on the plane and when they took me off they put me in the room, but later I came to know they took me to Equador and then to Guatemala.

Q: How did you get from Equador to Guatemala?

A: From there they took me to Malaysia and from Malaysia to Cuba, but I don't know how they made the arrangements from getting me from there.

*Id.* at 160-61.

On cross-examination, Mr. Raju was asked to explain the discrepancy:

Q: At one point, just today, you said you came to the United States through Equador, Guatemala, and later Malaysia and Mexico. Is that true?

A: Not Malaysia, Russia.

Q: So you came through Equador, Guatemala, Russia, Cuba and Mexico?

A: Start with Russia, then Cuba, then Equador, then Guatemala, and then Mexico.

*Id.* at 164.

Given these statements and the context of the other inconsistencies, we conclude the agency's credibility finding was substantially reasonable. And, having reasonably rejected his testimony, the agency was entitled to remain unpersuaded, after reviewing the remaining evidence, that he had been persecuted or held a well-founded fear of persecution. *See Ismaiel*, 516 F.3d at 1206. Mr. Raju was, therefore, necessarily ineligible for asylum, restriction on removal, or protection under the CAT. *See Ba v. Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008).

Accordingly, the petition for review is DENIED.

Entered for the Court

Wade Brorby
Senior Circuit Judge