**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MERY JULIANA MARPAUNG;
SAIBUN SIMANJUNTAK,

Petitioners,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 09-9545
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

Petitioners Mery Juliana Marpaung and Saibun Simanjuntak, natives and

citizens of Indonesia, petition for review of the Board of Immigration Appeals'

(BIA) decision affirming the immigration judge's (IJ) denial of Ms. Marpaung's

applications for asylum, restriction on removal, and relief under the Convention

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Against Torture (CAT).[1]  We have jurisdiction to consider the petition under 8 U.S.C. § 1252(a).  For the following reasons, we deny the petition.

## I.  BACKGROUND

Ms. Marpaung is of Batak ethnicity and is Christian.  She sought asylum based on her religion, but she also described her fear of persecution based on her Chinese-like appearance.  In her asylum application and at her hearing, she described the incidents that formed the basis for her asylum claim.  When she was in elementary school she attended a Christian school.  She recalled an incident in 1974 when she was in an inter-school competition and her team won a game of tug-of-war.  The losing students were "native Indonesians" and they accused Ms. Marpaung's team of cheating because they were Christian.  Admin. R. at 491.  The losing students then got angry and threw rocks at Ms. Marpaung and the other Christian students.

On May 13, 1998, she was at work for a Chinese business when an anti-Chinese riot started.  She was scared because her facial features look Chinese and she was afraid to be mistaken for a Chinese woman.  Ms. Marpaung hid during the riot but she was able to see the rioters looting and destroying the buildings around where she was hiding.  She returned home safely later that night.

---

[1]     Ms. Marpaung was the lead respondent in the immigration proceedings and her husband, Mr. Simanjuntak, was treated as a derivative beneficiary of her application.

In November of that year, her church was attacked as she was working with a group of children in preparation for a Christmas pageant. Her friend was badly injured but she was able to escape safely with the children. Two years later, on December 24, 2000, Ms. Marpaung was injured when a bomb exploded in the parking lot of the church where she was attending services. She cut her hands on shards of broken glass and she had to receive medical treatment. In addition, her car was destroyed because it was parked next to the car that exploded.

The IJ concluded that Ms. Marpaung's testimony was credible, but he determined that her experiences were not sufficient to constitute past persecution or a well-founded fear of future persecution. He also stated that Ms. Marpaung and her husband could relocate to a predominantly Christian area of Indonesia and that Ms. Marpaung's mother and siblings had all remained in Indonesia without harm. Finally, the court noted that Ms. Marpaung had failed to show that the government had acquiesced in her alleged persecution. Accordingly, the IJ denied asylum, restriction on removal, and relief under the CAT.

On appeal, the BIA affirmed the IJ's finding that Ms. Marpaung had not shown past persecution or a well-founded fear of future persecution. The BIA also concluded that Ms. Marpaung "could reasonably avoid future persecution by living in parts of Indonesia where there is minimal risk of attacks against Christians." Admin. R. at 4. Finally, the BIA affirmed the IJ's determination that

Ms. Marpaung was not entitled to restriction on removal or relief under the CAT.

Petitioners now seek review of the BIA's decision.

## II. ANALYSIS

### A. Standard of Review

The BIA affirmed the IJ's decision in a single-member brief order. *See* Admin. R. at 2-5; 8 C.F.R. § 1003.1(e)(5). In these circumstances, the BIA's decision is the final order under review. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. (quotation omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (quotation omitted).

### B. Asylum and Restriction on Removal

In order to be eligible for the discretionary relief of asylum, Ms. Marpaung must show that she suffered past persecution or she has a well-founded fear of future persecution on account of her race, religion, nationality, membership in a

particular social group, or political opinion. *See* 8 C.F.R. § 1208.13(b)(1),(2). In order to be eligible for restriction on removal, Ms. Marpaung must show that she suffered past persecution or that it is more likely than not that she will be subject to persecution if she returns to her native country. *Id.* § 1208.16(b)(1),(2).

## 1. Past Persecution

To establish eligibility for asylum or restriction on removal based on past persecution, an applicant must show: (1) an incident or incidents of persecution; (2) that is on account of one of the statutorily protected grounds; and (3) is committed by the government or forces the government is unable to control. *Niang*, 422 F.3d at 1194-95. The BIA determined that

> the incidents [Ms. Marpaung] described—including having rocks thrown at her after winning a game in school, witnessing the riots against ethnic Chinese Indonesians in May 1998, cutting her hands on glass after a bomb was set in a car outside her church, and witnessing vandalism and an attack on her friend at her church—are insufficient to constitute past persecution.

Admin. R. at 3 (record citations omitted). Ms. Marpaung argues that the BIA erred in making this determination because the cumulative effect of the incidents she described is sufficient to show past persecution on account of her religion and her physical appearance. In support of her argument, Ms. Marpaung relies on *Korablina v. I.N.S*, 158 F.3d 1038, 1045 (9th Cir. 1998), a case in which the Ninth Circuit reversed the BIA's decision because "[c]umulatively, the experiences suffered by Korablina compel the conclusion that she suffered

persecution." First, we are not bound by a decision from the Ninth Circuit. But, more importantly, the incidents described in *Korablina* were much more severe than those described by Ms. Marpaung, and the petitioner in that case was the victim of a violent attack targeted at her specifically. *Id*. at 1044-1045 (describing incidents where the petitioner witnessed violence against fellow Jews, including her boss who "disappeared" after he was beaten and the office was repeatedly ransacked; and where the petitioner was attacked, tied to a chair with a noose around her neck, and threatened with death).

"[W]e have held that a finding of persecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (quotation omitted). Because we cannot conclude that a reasonable factfinder would be compelled to find persecution based on the incidents Ms. Marpaung described, we must uphold the BIA's determination that Ms. Marpaung failed to establish past persecution. *See Hayrapetyan*, 534 F.3d at 1335.

## 2. Future Persecution

Ms. Marpaung next argues that she is entitled to asylum and restriction on removal because she has demonstrated a well-founded fear of future persecution and that it is more likely than not that she will be subject to future persecution.

The BIA found that Ms. Marpaung had not established a well-founded fear of future persecution because although

> [t]he United States Department of State's *Country Reports on Human Rights Practices for Indonesia* for 2004, and the United States Department of State's 2006 *International Religious Freedom Report for Indonesia* indicate that some religious violence continues, [the] incidents are sporadic and limited to specific parts of Indonesia such as central Sulawesi and the Malukus [sic].

Admin. R. at 4. The BIA noted that Ms. Marpaung had submitted "[a] few documents [that] identify harassment of Christians or isolated incidents of violence, but the record does not document ongoing widespread mistreatment of Christians." *Id*.

Ms. Marpaung asserts that the BIA erred in its assessment of the Country Reports and the Religious Freedom Report and that she would be subject to persecution on the basis of her religion throughout Indonesia.[2] We disagree. The Country Reports advised that the Indonesian Constitution continued to provide for religious freedom, that the government generally respected that constitutional provision, and that Christianity (i.e., Catholicism and Protestantism) continued to enjoy recognition as one of the five official religions in Indonesia. *See* Admin. R.

---

[2]     As part of this argument, Ms. Marpaung appears to assert a claim that Indonesian Christians are subject to a pattern and practice of persecution, *see* Pet'r Br. at 22-23, but this claim was not presented to the BIA, *see* Admin. R. at 48-54, 77-78. Accordingly, we cannot consider it because Ms. Marpaung failed to exhaust her administrative remedies with respect to this claim. *See Ribas v. Mukasey*, 545 F.3d 922, 930-31 (10th Cir. 2008).

at 238. The Country Reports indicated also that there was a "sharp drop" in violence between Christians and Muslims in Central Sulawesi and the Moluccas, and "inter-religious tolerance and cooperation improved during the year." *Id*. at 238. While Ms. Marpaung claims that the Country Reports "show[ed] that church bombings occurred with alarming frequency," Pet'r Br. at 20, the Reports actually showed a significant drop in church bombings from the year before, *see* Admin. R. at 238 (noting that there were 7 church attacks nationwide in 2003, down from 20 in 2002).

As for the Religious Freedom Report, it advised that the Indonesian government and the public generally respected religious freedom. *Id*. at 158. But, as the BIA recognized, the report noted continued religious violence in two areas of Indonesia, the Moluccas and Central Sulawesi. The report explained that "[r]eligiously-motivated violence and vigilante acts in Maluku and North Maluku [collectively, "the Moluccas"] declined significantly, although, as in past years, Central Sulawesi experienced sporadic bombings, shootings and other violence despite efforts to restore security and promote reconciliation." *Id*. The report further stated that "[g]overnment officials worked with Muslim and Christian community leaders to diffuse tensions in conflict areas, particularly in Central Sulawesi and the Moluccas." *Id*. We agree with the BIA that the sporadic and relatively isolated incidences of violence described in the Country Reports and the Religious Freedom report are not enough to establish that Ms. Marpaung

-8-

would be subject to persecution *throughout* Indonesia. Central Sulawesi and the Moluccas are islands far removed from where Ms. Marpaung used to live in Jakarta. *See id*. at 266. As the BIA noted, "the localized nature of harm to Christians indicates that the [petitioners] could reasonably avoid future persecution by living in parts of Indonesia where there is minimal risk of attacks against Christians." *Id*. at 4.

The BIA's decision is also supported by other evidence in the record. First, the record shows that the Indonesian government responded promptly to the church bombing in 2000 that Ms. Marpaung described. The government confirmed that there had been a series of church bombings on Christmas Eve 2000 by unknown terrorists and it formed a special interagency team to investigate the bombings, which led to the successful prosecution of one of the terrorists. *See id*. at 588. Second, Ms. Marpaung lived safely in Indonesia from December 25, 2000, until her departure in October 2002. Finally, Ms. Marpaung's mother and six siblings, all Christians, continue to live without harm in Indonesia. *See Decky v. Holder*, 587 F.3d 104, 112-13 (1st Cir. 2009) (upholding finding that petitioner did not have a well-founded fear of persecution in Indonesia when his siblings remained there "without significant mistreatment"). Accordingly, we conclude the BIA did not err in its assessment of the country conditions in Indonesia and substantial evidence supports the BIA's decision that Ms. Marpaung failed to establish a well-founded fear of future persecution.

Because Ms. Marpaung failed to meet the asylum standard of showing a well-founded fear of persecution, she necessarily failed to meet the higher standard for restriction on removal. *See Ba v. Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008). We therefore affirm the BIA's conclusion that Ms. Marpaung failed to establish her eligibility for restriction on removal.

## C. Relief Under the CAT

"To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (quotation omitted). Ms. Marpaung contends that the BIA erred by improperly conflating the requirements for asylum relief with those for withholding of removal under the CAT. We recently considered and rejected a similar argument in *Witjaksono v. Holder*, 573 F.3d 968, 978 (10th Cir. 2009). Here, the BIA's decision states:

> Because the [petitioners] have not established eligibility for asylum, it follows that they have failed to satisfy the higher clear probability standard of eligibility required for withholding of removal. Similarly, the [petitioners] have not established that it is more likely than not that they will be tortured upon return to Indonesia.

Admin. R. at 4 (citations omitted). As in *Witjaksono*, although the BIA's analysis of the CAT claim is "sparse," the BIA correctly stated the legal standards applicable to the two different claims. 573 F.3d at 978. And, as we explained in *Witjaksono*, the BIA "has no duty to write an exegesis on every contention," as

-10-

long as the decision is announced in terms sufficient to enable this court to review it. *Id.* (quotation omitted). The BIA's decision on Ms. Marpaung's CAT claim is sufficient for our review. Ms. Marpaung relied on the same incidents for her CAT claim as she did for her claim of persecution, and, as the BIA correctly concluded, that evidence does not indicate that the Indonesian government will torture her or acquiesce in her torture if she returns to Indonesia. *See also Sidabutar*, 503 F.3d at 1125-26 ("Since we affirmed the BIA's finding that it is unlikely that [petitioner] would face future persecution at the hands of the government or a non-governmental group that 'the government is unwilling or unable to control,' it is likewise against the odds that [petitioner] would be tortured by the government or a proxy for the government.").

## III. CONCLUSION

The petition for review is DENIED.

Entered for the Court

Jerome A. Holmes
Circuit Judge