FILED
United States Court of Appeals
Tenth Circuit

October 3, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EFREN NERI-GARCIA,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 11-9566

**ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS**

Submitted on the briefs:[*]

Dario Aguirre, Aguirre Law Group P.C., Denver, Colorado, for Petitioner.

Linda S. Wernery, Assistant Director, Civil Division, Walter Bocchini, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

Before **HARTZ**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioner Efren Neri-Garcia seeks review of the Board of Immigration Appeals' (BIA) denial of his applications for restriction on removal under the Immigration and Nationality Act (INA)[1] and for relief under the United Nations Convention Against Torture (the CAT). Years ago he was mistreated by government actors because of his homosexuality. At issue is whether conditions in Mexico, with respect to the treatment of gay men, have changed sufficiently to overcome the presumption that he would be at risk were he to return. We deny his petition for review.[2]

## I.

Neri-Garcia is a native and citizen of Mexico. He was removed on February 12, 1997, but reentered the United States the next day. Eventually he again came under the gaze of immigration authorities. After a credible-fear interview in January 2011, an asylum officer determined he had a reasonable fear of persecution or torture in Mexico, and his case was referred to an immigration judge (IJ). The IJ considered

---

[1]  "Restriction on removal was referred to as 'withholding of removal' before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) . . . . Although both parties and the IJ refer to withholding of removal, for the sake of accuracy, and because this claim was filed after IIRIRA's effective date, we will use the term 'restriction on removal' throughout this opinion." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

[2]  Our jurisdiction derives from 8 U.S.C. § 1252(a).

his applications for restriction on removal and for relief under the CAT pursuant to 8 C.F.R. § 1208.16.

At a hearing before the IJ, Neri-Garcia claimed he had been mistreated and persecuted in Mexico because he is homosexual. He testified to discrimination, threats, and physical attacks by family members, fellow students, and police officers. Nearly three decades ago police officers arrested him for a theft he did not commit and then tortured him to extract a confession. Following his conviction for that crime in 1984, he was incarcerated in a penitentiary in Guadalajara, where he was housed with psychiatric patients because he is gay. He testified to having been beaten and doused with cold water, not allowed to go outside, and kept in solitary confinement. He was released from the penitentiary in 1987, but was subsequently detained by the police on several more occasions. After being detained in 1994, he came to the United States. Although he has spent no significant time in Mexico since 1994, he says mistreatment of gays continues there. His statement was based on what he has seen on the news and on the internet. He also claimed it would be very difficult to change the macho culture in Mexico; he didn't say why.

Andres Villa Lopez also testified at the hearing. Lopez was employed as a custodian at the penitentiary in Guadalajara during part of the time Neri-Garcia was incarcerated. He corroborated Neri-Garcia's testimony regarding his treatment at the prison. Lopez, who is also gay, testified about his own mistreatment by his supervisors and threats against him by co-workers at the prison. He also stated he

- 3 -

had been attacked several times and that he and other gay men in Guadalajara were not open about their sexual orientation, except in gay bars. Lopez came to the United States in 1985 and eventually became a lawful permanent resident. He has returned to Guadalajara only once since 1985, yet claimed to be familiar with the gay community there. He did not say how. He conceded that homosexuals now live openly in Mexico City, but said many of his friends had been attacked and killed since he left Guadalajara. He provided no details. According to his testimony, attacks on homosexuals continue in Mexico City, but again, he did not explain the source of his claimed knowledge.

In a written decision, the IJ found Neri-Garcia to be a member of the particular social group of homosexual males from Mexico. The IJ found Neri-Garcia and his witnesses to be credible and the testimony to have established past persecution on account of his homosexuality. But the IJ also decided the Department of Homeland Security (DHS) met its burden to rebut the regulatory presumption of future persecution based on evidence of past persecution. The DHS established, by a preponderance of the evidence, a fundamental change in circumstances in Mexico such that Neri-Garcia's life or freedom would not now be threatened as a result of his sexual orientation.

The IJ based his conclusion on the 2009 and 2010 United States Department of State Human Rights Reports (Country Reports) for Mexico. Both Country Reports contain a section titled "Societal Abuses, Discrimination, and Acts of Violence Based

- 4 -

on Sexual Orientation and Gender Identity." According to these reports, homosexual conduct had experienced growing social acceptance in Mexico; gay pride marches were occurring in cities across the country, including one in Mexico City in which 400,000 people participated; Mexico City had legalized both gay marriage and adoption by gay couples; and the Mexican Supreme Court required all Mexican states to recognize gay marriages performed in those states where it was permitted. The IJ noted the 2009 and 2010 Country Reports were identical, except for a single high-profile case of violence against a gay activist described in the 2009 report.[3] Relying on the Country Reports, he also acknowledged the existence of continuing discrimination against homosexuals in Mexico, "principally in entertainment media programs and everyday attitudes."

The IJ discounted Neri-Garcia's and Lopez's testimony about nothing having changed in Mexico since they lived there, because neither of them had recently spent time there, and they otherwise failed to explain the bases of their statements and opinions. While acknowledging some continuing incidents of attacks on gay men by private individuals, the IJ found no evidence the Mexican government systematically

---

[3] According to the 2009 Country Report, a gay activist received threatening phone calls and was verbally and physically attacked in 2007 after participating in a gay rights march. He lost his teaching job in 2008 and lobbied to be reinstated. When he and his supporters went to meet with state officials, they were beaten by police, and the activist was taken to prison, threatened, and raped. He continued to face harassment by state authorities after his release. In his decision, the IJ did not specifically comment on the involvement of government actors in these incidents. Perhaps he did not consider it significant or, more likely, did not consider it sufficient evidence of systemic violence.

harms gay men or fails to protect them from violence. At bottom, the IJ concluded the Country Reports indicated the Mexican government had taken and was continuing to take significant steps to prevent violence and discrimination against gay men.

As to Neri-Garcia's claim for relief under the CAT, the IJ was concerned with the age of the seminal events—twenty-seven years. He noted how Mexican law now prohibits the use of torture, and the number of torture complaints had significantly decreased in the past year from thirty-three to ten. He found no evidence of the Mexican government committing or acquiescing in violations of human rights to an extent warranting a grant of protection under the CAT. In sum, he concluded Neri-Garcia was ineligible for restriction on removal or protection under the CAT.

Neri-Garcia took an appeal from the IJ's decision to the BIA. He also filed a motion to remand his case to the IJ based on new evidence of country conditions, specifically news articles about the recent killings of two gay activists in Mexico, one of whom was found beaten to death on the street and another who had been stabbed in his home. Although the articles quoted gay activists claiming the murders were hate crimes, none of the articles identified responsible groups or individuals.

The BIA adopted the IJ's reasoning regarding DHS's rebuttal of the presumption of future persecution and his conclusion that Neri-Garcia failed to show he would likely be tortured if he returned to Mexico. It also denied Neri-Garcia's motion to remand because the additional evidence he submitted would not have

- 6 -

impacted the IJ's bases for denying his applications for relief. It dismissed the appeal. Neri-Garcia filed this timely petition for review.

**II.**

"We look to the record for substantial evidence supporting the agency's decision: Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (quotations and alteration omitted). Specifically, "[w]hether the materials of record rebutted the presumptive inference from past to future persecution is a question of fact that we review for substantial evidence. That means we cannot reverse the determination of the BIA unless the record compels us to conclude that it was wrong." *Ba v. Mukasey*, 539 F.3d 1265, 1269 (10th Cir. 2008) (citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) (providing "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

Because a single member of the BIA affirmed the IJ's decision in a brief order, *see* 8 C.F.R. § 1003.1(e)(5), we review the BIA's opinion rather than the decision of the IJ, *see Uanreroro*, 443 F.3d at 1204. "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* Finally, we review the BIA's denial of a motion to remand for abuse of discretion. *Witjaksono v. Holder*, 573 F.3d 968, 978-79 (10th Cir. 2009).

- 7 -

## III.

### A.    Restriction on Removal

The INA provides:  "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's . . . membership in a particular social group . . . ."  8 U.S.C. § 1231(b)(3)(A).  Under this statute, the alien must establish "a clear probability of persecution" to be granted restriction on removal.  *Niang v. Gonzales*, 422 F.3d 1187, 1195 (10th Cir. 2005) (quotation omitted).  And the persecution must be "committed by the government or forces the government is either unable or unwilling to control."  *Id.* at 1194-95 (quotation omitted).  An alien can establish a presumptive entitlement to restriction on removal on the basis of past persecution.  *Id.* at 1195.  But a requested restriction on removal can be denied based on a change of circumstances in his home country.  *Id.*  In order to rebut the presumption of future persecution based on past persecution, DHS was required to establish by a preponderance of the evidence "a fundamental change in circumstances such that [Neri-Garcia's] life or freedom would not be threatened on account of [his membership in a particular social group] upon [his] removal to [Mexico]."  8 C.F.R. § 1208.16(b)(1)(i)(A).

Neri-Garcia claims the evidence—specifically the Country Reports—was insufficient to rebut the presumption of future persecution.  He first argues the differences between the 2009 and 2010 Country Reports do not support the BIA's

conclusion about fundamental changes in Mexico with respect to the treatment of homosexuals during the period between the reports. His contention misconstrues the BIA's decision. It relied on *both* the 2009 and 2010 Country Reports as reflective of current conditions in Mexico, which contrasted markedly with Neri-Garcia's testimony about his treatment before he left that country in 1994.

He next contends the BIA gave insufficient weight to the portion of the Country Reports indicating persistent discrimination against gays. He maintains, "There is no evidence of record that legislative change and court[] rulings have altered the repugnancy held by Mexican *machista* culture toward homosexuals." Pet. Opening Br. at 18. But an inhospitable attitude, even discrimination, is insufficient to establish a threat to Neri-Garcia's life or freedom if he returned to Mexico. *See Ba*, 539 F.3d at 1270 (stating "[d]iscrimination . . . , as morally reprehensible as it may be, does not ordinarily amount to persecution" (quotation omitted)). In any event, the BIA did not ignore the evidence of continuing discrimination in the Country Reports, and "it is not our prerogative to reweigh the evidence," *Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004).

Neri-Garcia also argues the BIA failed to consider his individual circumstances when it relied on the Country Reports as evidence of fundamental changes in Mexico regarding the treatment of gays. We addressed the importance of individualized analyses of Country Reports in *Krastev v. INS*, 292 F.3d 1268, 1276-77 (10th Cir. 2002). The *Krastev* petitioners claimed political persecution by

local government officials in Bulgaria from 1990 to 1994. *Id.* at 1276. The BIA assumed they established past persecution, but relied on a Country Report issued in 1996 to find fundamental changes had occurred in Bulgaria since 1994. *Id.* at 1275-76. That report said the Bulgarian government generally respected citizens' rights, and it listed no incidents of politically-motivated disappearances. *Id.* We reversed the BIA's decision, holding the 1996 Country Report was "wholly insufficient to establish by a preponderance of the evidence that conditions in Bulgaria had so changed that petitioners no longer had a well-founded fear of persecution." *Id.* at 1277. First, the previous Country Reports issued from 1990 to 1994 contained essentially the same language the BIA relied on from the 1996 Country Report to conclude there had been fundamental changes since 1994. *Id.* at 1276. Also, the BIA ignored the 1996 Country Report's description of continuing persecution by local officials, which was more relevant to the petitioners' claims than the report's general statement about the central government respecting citizens' rights. *Id.* And nothing in the 1996 Country Report indicated the central government was more willing to control local groups than it had been two years earlier. *Id.* Therefore, rather than supporting a finding of fundamental changes in circumstances, we held the Country Report relied on by the BIA in *Krastev* was "overwhelmingly favorable to petitioners' claims." *Id.*

Citing *Krastev* and cases from other circuits, Neri-Garcia argues the BIA failed to analyze the specific harm he suffered in relation to the information contained in

the Country Reports on Mexico. But he fails to respect the contrast between his individual circumstances in Mexico before 1995 and the mostly-positive developments in the treatment of homosexuals since then, as described in the 2009 and 2010 Country Reports. And he does not explain how the BIA's analysis of the information in the Country Reports was insufficiently applicable to his circumstances. His only argument appears to be that the 2009 Country Report is "overwhelmingly favorable" to his claim. Pet. Opening Br. at 17. He points to its description of threats and violence against a gay activist, including attacks by police, in 2007 and 2008. As the BIA noted, the IJ acknowledged those incidents, but he did not consider them sufficient, in light of the other evidence in the Country Reports, to show that the Mexican government fails to protect gay men from violence.

Based on the Country Reports relied on by the BIA, a reasonable adjudicator would not be compelled to conclude that Neri-Garcia would be threatened upon his removal to Mexico because he is gay. He has not shown the BIA's analysis of the Country Reports was flawed or that its conclusion regarding fundamental changes in the treatment of gays in Mexico is not supported by substantial evidence.

### B. Convention Against Torture

Neri-Garcia also contends the BIA erred in denying his application for relief under the CAT. "The [CAT] prohibits the return of an alien to a country where it is more likely than not that he or she would be tortured." *Yan v. Gonzales*, 438 F.3d 1249, 1251 (10th Cir. 2006) (quotation omitted). "Evidence of past torture," as well as "[e]vidence of gross, flagrant or mass violations of human rights" and "[o]ther

- 11 -

relevant information regarding conditions in the country of removal," are relevant to that determination. 8 C.F.R. § 1208.16(c)(3)(i), (iii), (iv). The BIA decided Neri-Garcia's twenty-seven-year-old evidence of torture did not establish likely torture if he returned to Mexico today. *See Niang*, 422 F.3d at 1202 (showing of past torture does not automatically render petitioner CAT eligible). The BIA also concluded the Country Reports did not support a likelihood of torture. Neri-Garcia does not address these conclusions. Instead, he asserts the BIA "ignore[d] the reality of extreme persecution of homosexuals at the local levels of government, especially by law enforcement." Pet. Opening Br. at 16. But he points to no evidence substantiating his contention. The BIA's decision is supported by substantial evidence.

### C.     Motion to Remand

"The BIA applies the same legal standard to motions to reopen and motions to remand." *Witjaksono*, 573 F.3d at 979 n.10. Thus, a motion to remand "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material." 8 C.F.R. § 1003.2(c)(1). Neri-Garcia argues the BIA should have remanded his case to the IJ for reconsideration based on news articles he submitted related to the killings of two gay activists in Mexico in May and July 2011. The BIA did not consider those incidents of violence to be statistically relevant considering Mexico's population of over 110 million people. It concluded the new evidence would not have affected the bases for the IJ's denial of relief because it was merely cumulative.

- 12 -

The IJ considered the previous high-profile case of violence against a gay activist, as described in the 2009 Country Report, yet found it to be insufficient to show the Mexican government failed to protect gay men from societal violence.

To obtain a reversal of the BIA's decision, Neri-Garcia must show an abuse of discretion. *See Witjaksono*, 573 F.3d at 978-79. "An abuse of discretion occurs when the BIA's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* at 979 (quotation omitted). Neri-Garcia does not address these bases for finding an abuse of discretion. Instead, he characterizes the BIA's statistical analysis as troubling and asserts that a remand is necessary because the ongoing killings of gays in Mexico completely undermines the government's position.

We disagree. The IJ determined there had been fundamental changes with respect to the treatment of gays in Mexico such that Neri-Garcia's life or freedom would not be threatened if removed to that country. The BIA appropriately considered whether the evidence of new incidents of violence against gay men was sufficient to justify a remand. Even if the news articles had reported direct or indirect involvement by government actors in the murders, the BIA's assessment of the probative value of isolated acts of violence, considering the size and population of Mexico, was reasoned and rational. Significantly, the articles did not attribute

either of the murders to government actors or groups the government was unable or unwilling to control.

The BIA did not abuse its discretion in denying Neri-Garcia's motion to remand. The petition for review is denied.