FILED
United States Court of Appeals
Tenth Circuit

September 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ELENA GAGARINA;
ANTON EDLICICO,

Petitioners,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 14-9513
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

Petitioners Elena Gagarina and her husband Anton Edlicico, proceeding pro se,

petition for review of a final removal order of the Board of Immigration Appeals

(BIA) dismissing their appeal from the denial by an immigration judge (IJ) of

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Gagarina's application for asylum and restriction on removal.[1] We exercise jurisdiction under 8 U.S.C. § 1252(a)(1); and liberally construing the pro se petition for review, we deny it.

## BACKGROUND

Ms. Gagarina is a native and citizen of Russia, and Mr. Edlicico is a native and citizen of Moldova. Both entered the United States in 2007 with J-1 visas, authorized for nonimmigrant exchange visitors, but remained beyond the time permitted. In 2008 Ms. Gagarina applied for asylum and other relief from removal, claiming that in Russia she had been persecuted and would (if returned) be subject to future persecution because of her political opinions. Her husband is a derivative applicant. Petitioners have conceded removability.

To establish eligibility for asylum, Ms. Gagarina had to show that she "suffered past persecution or has 'a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (footnote omitted) (quoting 8 U.S.C. § 1101(a)(42)). "To obtain restriction on

---

[1] The IJ and BIA also denied Ms. Gagarina relief under the Convention Against Torture (CAT). But Petitioners did not preserve their CAT claim for appellate review because their brief does not mention Ms. Gagarina's CAT claim or challenge the agency's denial of the claim. "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Although we liberally construe pro se filings, we will not assume the role of advocate and make arguments for a pro se appellant. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

removal, [she had to] demonstrate that her 'life or freedom would be threatened in [Russia] because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (quoting 8 U.S.C. § 1231(b)(3)(A)).

In support of her claims, Ms. Gagarina asserted the following in her application and her merits-hearing evidence: While a student at Chelyabinsk State University, Ms. Gagarina became friends with fellow student Olga Antipov, whose father, Yuriy Antipov, was a very wealthy businessman who aspired to be elected to the Russian parliament. At Olga's request, Ms. Gagarina joined a university organization called "Green," believing it to be an environmental group; and she gathered signatures of others who also wished to join. Olga later told her, however, that Green did not exist and was "a cover-up for the Parliament" and the signatures were "for necessary candidates"; but it turned out that the signatures were just for her father. Admin. R. at 319.

Although Olga offered her money for her silence, Ms. Gargarina refused and scheduled a radio interview in order to "spread as much information as [she] could about [these] manipulations." *Id.* at 685. But the radio station ultimately cancelled the interview, after two people approached her to say that she would have "big problems" if she gave the interview. Her experience was similar when she submitted an article to the local newspaper about the Green organization. It was never published, and two days after she submitted it, four men told her to shut up and beat her to unconsciousness. She produced hospital records showing that she suffered

broken ribs, a concussion, and bruises. Two months later, police stopped her, searched her purse, and pulled out a bag of drugs that she had never seen before. She was arrested and detained for two days, during which she was given no food, handcuffed to a chair, and beaten. Olga's father got her out of custody, but told her in the presence of a police officer that he was responsible for the drugs being in her purse and would kill her if she did not keep quiet.

Ms. Gagarina was expelled from the university. Because her father constantly drank and beat his family, she did not want to return home. She obtained a visa to come to the United States and sought asylum. She feared that her life would be in danger if she returned to Russia, because people had come to the family home and to her grandmother's village looking for her, and a neighbor in Russia had said that someone from the Ministry of Internal Affairs had asked where she was.

In his decision denying relief, the IJ found Ms. Gagarina to be a credible witness. But he concluded that she had failed to establish that she was targeted for mistreatment because of any political opinion. The IJ wrote:

> The Green organization was not established by [Ms. Gagarina] to be a governmental actor, but rather [her] testimony suggested it was a private organization, privately funded by Yuriy Antipov and student run. Although [Ms. Gagarina] offered some documentary evidence that suggested Yuriy Antipov was a governmental actor in Russia, she was unable to demonstrate that he was elected or appointed to office since her departure or that he had any tangible current or past connection to the government. Indeed, other than possessing a tremendous amount of personal wealth, [Ms. Gagarina] did not establish that Yuriy Antipov targeted her for any reason other than her attempts to expose his private actions, rather than any specific political opinion, real or imputed, she held.

Moreover, it was clear through testimony that [Ms. Gagarina] particularly wanted to expose the corruptions of Yuriy Antipov, an individual whose corruption was aberrational, and not that of government corruptions at large. Consequently, [Ms. Gagarina] has not demonstrated that any actions she took—while in Green or upon leaving Green—were related to a political opinion she held, whether real or imputed. Further, her actions after leaving Green, even if classified as whistleblowing, seem to be directed solely at revealing the personal actions/corruptions of Yuriy Antipov, a private individual, and not that of the Russian government; as such, her actions are more characteristic of a highly personal dispute rather than a political opinion. Consequently, this Court finds that [Ms. Gagarina] has failed to establish that she possessed a political opinion pursuant to [§ 1101(a)(42] of the Act.

Admin. R. at 123-24 (footnote, bracket, citations, and internal quotation marks omitted).

On appeal the BIA adopted the IJ's decision, agreeing that the central reason Mr. Antipov sought to silence Ms. Gagarina was to prevent her attempts to publicize his improper acts and interfere with his political hopes, not because of any sort of political opinion she held or that he imputed to her. Because she had failed to demonstrate that the harm she had suffered was on account of a statutorily protected ground, the BIA dismissed Petitioners' appeal.

## DISCUSSION

We review the BIA's legal conclusions de novo. *See Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). Factual findings are reviewed deferentially under a substantial-evidence standard; they must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole,"

- 5 -

and may be reversed only if the evidence "not only *supports* [a contrary] conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992) (internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4)(B). Because the BIA issued a single board member's brief order affirming the IJ's order, we focus our review on the BIA's order but may consult the IJ's ruling to the extent that it fleshes out the rationale adopted by the BIA. *See Neri-Garcia v. Holder*, 696 F.3d 1003, 1008-09 (10th Cir. 2012).

For persecution to be "on account of" a statutorily protected ground under § 1101(a)(42), "the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012) (internal quotation marks omitted). Persecution "on account of" one's political opinion means "persecution on account of the *victim's* political opinion, not the persecutor's." *Elias-Zacarias*, 502 U.S. at 482. And "the mere existence of a generalized 'political' motive underlying the [persecutor's action] is inadequate to establish . . . the proposition that [the petitioner] fears persecution *on account of* political opinion." *Id.* Official retaliation for threatened exposure of governmental corruption or by a political leader may constitute persecution on account of political opinion if the "whistleblowing is . . . directed toward a governing institution," but not if it is directed "only against individuals whose corruption was aberrational." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) (internal quotation marks omitted). And "retaliation completely

- 6 -

untethered to a governmental system does not afford a basis for asylum." *Id*. at 1337 (internal quotation marks omitted).

The record does not compel the conclusion that the harm suffered or to be suffered by Ms. Gagarina was or will be on account of her political opinions. Under our standard of review, we must defer to the IJ's finding that she was targeted only because of her threat to expose the private misdeeds of Mr. Antipov in his efforts to gain political office. We do not address Petitioners' arguments raised for the first time in this court: (1) that there are no jobs or prospects in Russia or Moldova for young people deported from America without Russian degrees; (2) that rape of women is widespread and underreported in Russia; (3) that Mr. Antipov is a member of the Russian mafia and has now been elected to Russia's parliament; and (4) that Russia is at war attempting to conquer Moldova and does not have a good relationship with the United States. We lack jurisdiction to consider these arguments because Petitioners failed to exhaust their administrative remedies as to these claims. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007).

We grant the government's Motion to Strike Exhibits from Petitioners' Opening Brief, because we decide petitions based only on the administrative record. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the

petition only on the administrative record on which the order of removal is based[.]").  We dismiss the petition of review.

Entered for the Court

Harris L Hartz
Circuit Judge