**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAIME GARCIA,

      Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

      Respondent.

No. 14-9555
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **MORITZ**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Jaime Garcia, a native and citizen of Mexico, petitions for review of a final

removal order and the denial of his motion to remand. Exercising jurisdiction under

8 U.S.C. § 1252(a), we deny the petition.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Garcia admitted he was present in the United States illegally and subject to removal, but he sought asylum, restriction on removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture (CAT). His requests were based on allegations that he was persecuted in Mexico because he was part of a group of "Mexican males who oppose gang recruitment," R. at 88, and that he faced more of the same treatment if he were to return. Specifically, Garcia stated that, beginning when he was ten years old, he was beaten weekly for repeatedly refusing to join a gang. Because of his refusals, gang members murdered his stepfather and ten-year-old brother by running them over with trucks in a manner made to look like accidents. After his brother was killed in 1987, Garcia came to the United States, but he returned to Mexico in 1988. Two months later, his grandmother was killed, allegedly in the same manner and for the same reason as his stepfather and brother. Soon thereafter, Garcia fled to the United States. In 2004, he returned to his hometown in Mexico after an immigration judge (IJ) granted him voluntary departure. Not long after, he was beaten with a hammer and told not to come back. He relocated in Mexico a considerable distance from his town, but there he learned the gang was still looking for him, which prompted him to flee again to the United States in 2005.

Garcia was placed in removal proceedings in 2009. After a 2013 hearing, the IJ found Garcia credible, denied his asylum application as untimely, and denied the other requested relief.

Garcia appealed the denial of restriction on removal and CAT relief to the Board of Immigration Appeals (BIA), which dismissed his appeal. The BIA ruled that Garcia was not eligible for restriction on removal because he had not established that "Mexican males who oppose gang recruitment" is a "particular social group" as defined in *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014), and its companion case, *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014). Under those cases, members in such a group must "share a common immutable characteristic," and the group must be "defined with particularity" and "socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 237.[1] The BIA concluded that Garcia's proposed social group lacked the requisite particularity because it was "amorphous and lack[ed] definable boundaries" to the extent it "could include persons of any age or background." R. at 4. The BIA also determined that Garcia had provided no evidence that "people who resist gang recruitment are perceived, considered, or recognized by Mexican society to be a distinct social group." *Id.* Relatedly, the BIA denied a motion to remand Garcia had filed because he had not shown how the application of *Matter of M-E-V-G-* and *Matter of W-G-R-*, both of

---

[1] *Matter of M-E-V-G-* and *Matter of W-G-R-* were issued after the IJ's decision, but as we explain in more detail below, they did not alter the legal or evidentiary standards of the BIA's prior cases.

which were issued after the IJ had denied Garcia relief, would change the result, and because he had not shown that further fact finding was necessary.

With regard to the CAT claim, the BIA agreed with the IJ's conclusion that Garcia did not demonstrate a clear probability of torture either by the government or with its acquiescence.

## STANDARDS OF REVIEW

Because the BIA issued a brief order by one member, we treat it as the final removal order. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "We review the BIA's legal determinations de novo." *Ferry v. Gonzales*, 457 F.3d 1117, 1126 (10th Cir. 2006). "What constitutes a particular social group is a pure question of law that we review de novo." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "[W]e review the BIA's denial of a motion to remand for abuse of discretion." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1009 (10th Cir. 2012).

## DISCUSSION

### A. Restriction on removal

To succeed on his request for restriction on removal, Garcia had to "establish a clear probability of persecution" in Mexico "on the basis of . . . membership in a particular social group." *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004) (discussing 8 U.S.C. § 1231(b)(3)). Garcia argues the BIA erred in concluding that

"Mexican males who oppose gang recruitment" does not qualify as a particular social group. As to the particularity component, he points to *Rivera-Barrientos v. Holder*, where we stated that "[a] discrete class of young persons sharing the past experience of having resisted gang recruitment can be a particularly defined trait." 666 F.3d 641, 650 (10th Cir. 2012). Based on that view, we "disagree[d] with the BIA's conclusion that El Salvadoran women between the ages of 12 and 25 who have resisted gang recruitment do not make up a group that can be described with sufficient particularity to meet the standard for a 'particular social group.'" *Id.*

We need not resolve Garcia's argument regarding the particularity component because he wholly failed to meet his burden on the social-distinction component. To do that, Garcia needed to provide evidence that members of Mexican "'society perceive those with the characteristic in question as members of a social group.'" *Id.* (quoting *Matter of C-A-*, 23 I. & N. Dec. 951, 957 (BIA 2006)); *see also id.* at 653 (concluding that there was no record evidence of societal perception). This requires evidence of "two necessary conditions": (1) "that citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct social group," *id.* at 650-51, and (2) "that the applicant's community is capable of identifying an individual as belonging to the group," *id.* at 651.

Garcia points to no evidence satisfying the first condition. Instead, he argues that his proposed group is socially distinct because, as the BIA recognized, the record contains evidence that gang violence in Mexico is ongoing and widespread, and

"[s]ocieties that grapple with serious gang violence are more likely to perceive resisters as a distinct social group." Pet'r's Br. at 22. He likens gang-resisters to the hypothetical group of landowners the BIA said could be sufficiently distinct in an "underdeveloped, oligarchical society," but not "in Canada," as part of the BIA's illustration that the nature of the society in question plays a role in determining both particularity and social distinction. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 241. Garcia claims that in a gang-dominated society, those who resist gang membership are, like the minority landowners in the hypothetical, more likely to be perceived by society as socially distinct. That may or may not be so, but argument is not evidence, and there is no evidence that Mexican society perceives "Mexican males who oppose gang recruitment" as a distinct social group.[2] We therefore conclude that the BIA's ruling on social distinction was correct.[3]

---

[2]  The only evidence of record that might have aided Garcia in meeting his burden are U.S. Department of State Human Rights Reports for Mexico from 2010 and 2011. As the BIA noted, those reports discuss the prevalence of gang violence but contain nothing about whether Mexican society perceives "Mexican males who oppose gang recruitment" as a distinct social group.

[3]  In reaching this conclusion, we are not suggesting that gang-related social groups can never qualify as a particular social group. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 251 (cautioning that BIA decisions predating *Matter of M-E-V-G-* and *Matter of W-G-R-* "should not be read as a blanket rejection of all factual scenarios involving gangs"). There is simply no relevant evidence in the record supporting the particular social group Garcia has proposed.

**B. Motion to remand**

In his motion to remand, Garcia argued that remand to the IJ was warranted because the intervening BIA decisions in *Matter of M-E-V-G-* and *Matter of W-G-R-* had changed the legal standard for the "social distinction" component of the particular-social-group inquiry. We see no abuse of discretion in the BIA's denial of the motion to remand on the ground that Garcia presented no argument as to how the result might change on remand or what further fact finding might be necessary. As we recently explained, *Matter of M-E-V-G-* and *Matter of W-G-R-* merely clarified that the BIA was renaming "social visibility" as "social distinction," and that neither styling meant that a social group had to be "'ocularly visible'" (i.e., visible "'by sight'"). *Rodas-Orellana v. Holder*, ___ F.3d ___, Nos. 14-9516 & 14-9548, 2015 WL 859566, at *5 (10th Cir. Mar. 2, 2015) (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 216, 217). In Garcia's case, the BIA's ruling on social distinction did not rely on a lack of "ocular visibility," so the clarification could have had no effect on his request for restriction on removal. Further, there is no evidence in the record regarding the perception of Mexican society that the IJ overlooked, which might have necessitated a remand to the IJ. *Cf. id.* at *8-9 (declining to remand to BIA in part because there was "no evidence of social distinction here that would need to be reconsidered in light of [*Matter of M-E-V-G-* and *Matter of W-G-R-*]").

Garcia also argues that *Matter of M-E-V-G-* lists new evidentiary burdens, and had he known of them, he could have hired an expert to determine whether Mexican

society perceives "Mexican males who oppose gang recruitment" as socially distinct. Further, he points out that in *Matter of M-E-V-G-*, the BIA remanded because the clarification and guidance the BIA provided in that case might "have an impact on the validity of the respondent's proposed group." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 252. Neither argument establishes that the BIA abused its discretion in this case. Prior to *Matter of M-E-V-G-* and *Matter of W-G-R-*, the BIA and this court made clear that societal perception was the relevant inquiry and that an applicant needed evidence of that. *See, e.g.*, *Rivera-Barrientos*, 666 F.3d at 650-51, 653; *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594-95 (BIA 2008); *Matter of C-A-*, 23 I. & N. Dec. at 957, 960. The importance of such evidence was made clear enough in those cases (all decided before Garcia's IJ hearing) to alert Garcia of the need to gather relevant evidence. His failure to seek out an expert or otherwise gather such evidence is not grounds for finding the BIA abused its discretion in denying his motion to remand. And the remand in *Matter of M-E-V-G-* was, as we explained in *Rodas-Orellana*, because the alien's "'proposed particular social group ha[d] evolved during the pendency of his appeal," and the Third Circuit, which had remanded the case to the BIA, "indicated that a remand may be appropriate.'" *Rodas-Orellana*, 2015 WL 859566, at *8 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 252). There are no similar circumstances here.

**C.  CAT relief**

Finally, we conclude that the BIA did not err in denying Garcia's CAT claim. To prevail on his CAT claim, Garcia had to show it is "more likely than not that he . . . would be tortured if removed" to Mexico.  8 C.F.R. § 1208.16(c)(2).  Although torture need not be on account of a protected ground, *Elzour*, 378 F.3d at 1150, it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).  And as the BIA observed, Garcia only attempted to show acquiescence through his view that the police investigation of the hammer attack and the deaths of his three relatives was inadequate.  But acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7).  Garcia's allegations that the police investigations were inadequate does not show that any public official had the requisite prior awareness.

## CONCLUSION

The petition for review is denied.

Entered for the Court

John C. Porfilio
Circuit Judge