FILED
United States Court of Appeals
Tenth Circuit

November 25, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLOS EDUARDO MORENO
SANCHEZ,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9611
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY** and **PHILLIPS**, Circuit Judges.
_____

Carlos Eduardo Moreno Sanchez (Mr. Moreno), a citizen of Venezuela,

entered the United States in 2013, and the Department of Homeland Security began

removal proceedings against him. He conceded removability and applied for asylum,

restriction on removal,[1] and protection under the Convention Against Torture (CAT).

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Restriction on removal used to be called "withholding of removal." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1006 n.1 (10th Cir. 2012). Some still use the term "withholding," but we will use "restriction."

The immigration judge denied him relief, and the Board of Immigration Appeals (BIA) dismissed his appeal. He now seeks review of the BIA decision, and we deny his petition.

## I. Mr. Moreno's Testimony

Found credible by the immigration judge, Mr. Moreno's testimony explained his decision to come to the United States. In Venezuela, he rented, sold, and installed security cameras. In 2008, he gave the police a video showing a vehicle theft. A short time later, four people kidnapped him and his brother, citing Mr. Moreno's having turned over the video to the police. Although they threatened to kill Mr. Moreno and his brother, they ultimately released them in exchange for a ransom. Mr. Moreno reported the kidnapping even though the kidnappers, who claimed to be police officers, told him not to do so.

Mr. Moreno did not see the kidnappers again for roughly five years and "went back to living [his] normal life." R. at 133. But one day while he was outside an election center wearing a hat that signaled his opposition to the government, one of the kidnappers approached him on a motorcycle and pulled up his shirt, revealing a gun. The man tapped Mr. Moreno's hat and called him "a derogatory phrase." *Id.* at 169. The man said that he had been in jail and that Mr. Moreno would pay with his life. Mr. Moreno stayed in the area because the military was there, and he was able to vote that day. But when someone shot his car about a month later, he decided to leave Venezuela. After he left, his brother was kidnapped. The kidnappers asked

2

about Mr. Moreno's whereabouts and apparently threatened to harm his brother if Mr. Moreno did not "appear." *Id.* at 146.

## II. Discussion

### A. Scope and Standard of Review

A single BIA member issued a brief order affirming the immigration judge's decision in this case, so we review the BIA decision and any parts of the immigration judge's decision that it relies on. *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review the BIA's legal conclusions de novo. *Id.* And we review its factual findings for substantial evidence, meaning that we will treat those findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

### B. Asylum and Restriction on Removal

To receive asylum, an applicant must be a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on account of any of five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). An applicant can obtain refugee status by showing past persecution on account of a protected ground, creating a rebuttable presumption of a well-founded fear of future persecution on account of such a ground. *Rodas-Orellana*, 780 F.3d at 986. An applicant can also obtain refugee status, even without past persecution, by showing a subjectively genuine and

3

objectively reasonable fear of future persecution on account of a protected ground. *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011).

Mr. Moreno asserted that he suffered persecution on account of his political opinion and on account of his membership in a particular social group: witnesses of a crime. The BIA concluded that "witnesses of a crime" is not a cognizable particular social group, a conclusion Mr. Moreno now challenges. But before addressing that challenge, we note that the record refutes Mr. Moreno's claim that the BIA misidentified his proposed particular social group. The BIA identified his proposed group just as his counsel did before the immigration judge. *Compare* R. at 3 (BIA: "witnesses to crime"), *with* R. at 110 (Counsel: "witnesses of a crime").

"What constitutes a particular social group is a pure question of law that we review de novo." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). A "particular social group" means "a group of persons all of whom share a common, immutable characteristic such as sex, color, or kinship ties." *Rodas-Orellana*, 780 F.3d at 990 (ellipsis and internal quotation marks omitted). A particular social group must be defined with particularity—it may not be indeterminate, "too subjective, inchoate, and variable." *Id.* (internal quotation marks omitted). It must also be socially distinct, a quality informed by "whether citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct

4

social group, and whether the applicant's community is capable of identifying an individual as belonging to the group." *Id.* at 991 (internal quotation marks omitted).[2]

We agree with the BIA that "witnesses to crime" is not a socially distinct group and that, as a result, it is not a cognizable particular social group. Mr. Moreno has not identified evidence showing that Venezuelans consider crime witnesses to constitute a distinct social group. Instead, he highlights information suggesting that Venezuelans commonly do "not report crimes out of fear." Aplt. Br. at 22. For example, the State Department's 2015 Human Rights Report for Venezuela states that "many victims did not report kidnappings to police or other authorities due to fear of retribution." R. at 269. But Mr. Moreno has not directed us to evidence suggesting that victims fear retribution in any form other than personal retaliation for the act of reporting a crime. It is one thing to say that many victims do not report crimes for fear of retribution; it is quite another to say that society recognizes crime witnesses as a distinct social group. Because we have concluded that Mr. Moreno's proposed particular social group is not socially distinct, we need not consider whether it is sufficiently particular.

---

[2] We reject Mr. Moreno's challenge to the BIA's requirement that a particular social group be socially distinct, as explained in *In re M–E–V–G–*, 26 I. & N. Dec. 227, 240–41 (BIA 2014), and *In re W–G–R–*, 26 I. & N. Dec. 208, 215–18 (BIA 2014), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). Aplt. Br. at 23–24. We have concluded that *In re M–E–V–G–* and *In re W–G–R–* "are consistent with our past interpretation of social visibility." *Rodas-Orellana*, 780 F.3d at 992.

Mr. Moreno refines his proposed particular social group on appeal, describing his new proposed group as "Venezuelans who witnessed and reported any criminal acts, particularly by the police or other affiliates." Aplt. Br. at 23. But we do not consider this new proposal because Mr. Moreno did not present it to the immigration judge or the BIA. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 647 n.2 (10th Cir. 2012). Nor will we remand the case for the BIA to consider his refined proposal because he identifies no evidence suggesting that it is any more socially distinct than his original proposal, *see Rodas-Orellana*, 780 F.3d at 996 (declining to remand in part because the petitioner did not "point to any evidence indicating that" narrowing his proposed group "lends more support to his argument for social distinction").

Besides, even if Mr. Moreno belonged to a cognizable particular social group, we could not disturb the BIA's finding that he failed to show a nexus between the harm he suffered and a protected ground. Substantial evidence supports the BIA's finding that Mr. Moreno's alleged persecutors were motivated by revenge rather than his political opinion or his membership in a particular social group. Mr. Moreno himself testified that the alleged persecutors sought vengeance against him and that he assumes "they want retaliation." R. at 147. True, Mr. Moreno appears to have testified at one point that he believes the man threatened him at the election center because of his anti-government expression. *Id.* at 159. But at another point he agreed that he thinks the man "wanted revenge because of the jail time." *Id.* at 160. And he also testified that a lot of other people were wearing the same anti-government hat he wore, yet he did not witness anyone else receive threats.

6

Given this testimony, a reasonable adjudicator would not be compelled to find that Mr. Moreno's alleged persecutors acted on account of a protected ground.

To the extent Mr. Moreno argues that, even if he did not show past persecution on account of a protected ground, he nevertheless showed a well-founded fear of future persecution on account of a protected ground, we reject that argument. The evidence supporting the finding that his alleged persecutors were motivated by personal retaliation also supports a finding that it is not objectively reasonable for Mr. Moreno to fear future persecution on account of a protected ground.

Having concluded that the BIA did not err in analyzing Mr. Moreno's asylum claim, we need not belabor the discussion of his application for restriction on removal. To qualify for restriction, an applicant must show a clear probability of persecution on account of a protected ground. *See Rodas-Orellana*, 780 F.3d at 987. This burden is higher than the burden for asylum. *Id.* at 986. So Mr. Moreno's inability to meet the burden for asylum necessarily precludes him from meeting the burden for restriction. *See id.* at 987.

## C. Protection Under the CAT

The CAT "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez*, 406 F.3d at 1192 (brackets and internal quotation marks omitted). In contrast to asylum and restriction claims, a CAT claim does not require the petitioner to show a nexus between the harm and a protected ground. *See id.*

7

Mr. Moreno argues that the BIA's denial of his CAT claim lacks substantial evidence. But the record refutes his argument that the immigration judge and the BIA "ignored the impact" of the State Department's report, Aplt. Br. at 46, as the immigration judge expressly considered "the current country conditions in Venezuela," R. at 77. And the record similarly refutes his claim that the agency "did not seriously consider evidence of the kidnapping and attempts to kill" him, Aplt. Br. at 48, as the immigration judge expressly recognized that he "was kidnapped and threatened by a criminal organization," R. at 76. At bottom, Mr. Moreno disagrees with the agency's assessment that he will not likely be tortured if he returns to Venezuela. But the evidence—including Mr. Moreno's testimony that he remained at the election center after being threatened because the military was present, and that his life went back to normal at one point—would not compel a reasonable adjudicator to find that Mr. Moreno is more likely than not to be tortured if he returns to Venezuela. So the agency's finding is conclusive.

III. Conclusion

Mr. Moreno's petition for review is denied.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

8