**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 30, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ELIDA NOEMI MANCHAME-
MORALES; VICTOR ALBERTO
OLIVA-MANCHAME,

     Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,[*]

     Respondent.

No. 20-9599
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

---

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the United States. Consequently, his name has been substituted for William P. Barr as Respondent, per Fed. R. App. P. 43(c)(2).

[**]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Elida Noemi Manchame-Morales, the lead petitioner, filed applications for asylum, restriction on removal,[1] and protection under the Convention Against Torture ("CAT"), on behalf of herself and her minor child and co-petitioner, Victor Alberto Oliva-Manchame. Both are natives and citizens of Guatemala. An immigration judge ("IJ") denied the applications. The Board of Immigration Appeals dismissed Petitioners' appeal of the IJ's order and entered a final order of removal. They now appeal the Board's order.[2] Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition for review.

## I.  BACKGROUND

In her testimony and the affidavits she submitted in support of her applications, Ms. Manchame-Morales explained why she fears returning to Guatemala. Her father started sexually assaulting her when she was seven. He also assaulted her sisters. They did not report him to the police because their mother had left the family and he was their only caretaker. Ms. Manchame-Morales ultimately left the father's home and moved in with a sister. When she was 14 and the sister could no longer support her, she found a job and started supporting herself.

---

[1] Restriction on removal used to be called "withholding of removal." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1006 n.1 (10th Cir. 2012) (quotations omitted).

[2] Petitioners also sought termination of their removal proceedings in light of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The IJ denied the motion and the Board upheld that ruling. Petitioners do not challenge that aspect of the Board's decision in their petition for review, so we do not address it.

At age 17, Ms. Manchame-Morales met and started living with her partner, Luis Alberto Oliva Arrivillaga (Luis), who is Victor's father. Luis was a machine operator and made a good salary. Gang members began to harass him and take his money. He told her that if he refused to give them money, they would threaten to kill him, her, or Victor. Once, when Luis said he would call the police, the gang members severely beat him. He told her he feared for the family's safety. He disappeared soon thereafter. Ms. Manchame-Morales feared the gang members had killed him. About three months later, Luis called to tell her he had fled to the United States.

After Luis left, the gang members started harassing Ms. Manchame-Morales for money. When they went to her house and pounded on the door demanding money, she threatened to call the police. Undaunted, they stayed outside her home for several hours. The harassment continued after they learned Luis was sending her money. They followed her when she went to the bank to collect the money he sent. Ms. Manchame-Morales described the gang members as "extortionists," ROA, Vol. 2 at 160, and said they persecuted her because they knew she was "his wife," *id.* at 161.[3] She testified that she did not have trouble with the gangs until she started living with Luis. She was "afraid of them because [she] heard that they enter[ed] . . .

---

[3] Ms. Manchame-Morales explained that she and Luis are not legally married but consider themselves husband and wife.

homes to steal, to extort, and to beat people." *Id.* at 159. She did not tell the police because she feared retribution and believed the police were working with the gangs.

Ms. Manchame-Morales and Victor came to the United States in 2016. While here, she had a baby girl. She testified that she feared returning to Guatemala with her children because the "gang members would assume [she] had money and would . . . kidnap [her U.S. citizen] daughter for extortion." *Id.* at 262. She was afraid the same gang members would recognize her. When asked whether she could relocate to another part of Guatemala, she said doing so was not an option because she had no contact with her birth family and was afraid to reconnect with them. Because her father was still alive, she was afraid he would "repeat the history" and harm her daughter. *Id.* at 164.

The IJ found Ms. Manchame-Morales credible but concluded Petitioners did not qualify for asylum, restriction on removal, or CAT relief. The Board affirmed the IJ's order and dismissed Petitioners' appeal.

## II. DISCUSSION

When, as here, a single Board member affirmed the IJ's decision in a brief order, we review the Board's decision, but we may consult the IJ's "more complete explanation" of the grounds for the Board's decision. *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008-09 (10th Cir. 2012).

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Under that standard, "our duty is to guarantee that factual determinations are

4

supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (quotations and brackets omitted). The agency's findings of fact "are conclusive" unless the record as a whole "demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012) (quotations omitted).

## A. *Asylum*

To qualify for asylum, an applicant must establish that she is a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is someone who is unable or unwilling to return to her country "because of persecution or a well-founded fear of persecution on account of" any of five protected grounds, including "membership in a particular social group." *Id.* § 1101(a)(42)(A). An applicant can make that showing through evidence of "past persecution on account of a protected ground, which gives rise to a rebuttable presumption of having a well-founded fear of future persecution on account of a protected ground." *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015) (quotations omitted). An applicant may also obtain refugee status, even without proving past persecution, by showing she has a subjectively genuine and objectively reasonable fear of future persecution on account of a protected ground. *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011).

Persecution is on account of a protected ground if the ground "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The Board has interpreted "'one central reason' to mean the

5

protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Karki v. Holder*, 715 F.3d 792, 800-01 (10th Cir. 2013) (quotations and brackets omitted); *see also Rivera-Barrientos*, 666 F.3d at 647 (explaining that the persecution must be because of the protected status instead of for some other, unprotected reason). An IJ's finding regarding a persecutor's motivation is a finding of fact that the BIA reviews for clear error. *See Matter of N-M-*, 25 I. & N. Dec. 526, 532 (BIA 2011); *see also* 8 C.F.R. § 1003.1(d)(3)(i) (establishing clear error standard of review).

Petitioners' applications for asylum and restriction alleged that Ms. Manchame-Morales had suffered past persecution in Guatemala and is likely to suffer future persecution based on her membership in a particular social group that she defined as her partner's family.[4] But the IJ found that the gang members targeted her because of their "criminal motive to obtain money unlawfully," not because of "an animus against [Luis's] family." ROA, Vol. 2 at 95. The IJ thus concluded she failed to establish the required nexus between her membership in his family and any

---

[4] Ms. Manchame-Morales also sought asylum and restriction on removal based on her membership in the particular social group of her female gender. But she did not ask the Board to review the IJ's denial of relief based on her claim of persecution at the hands of her father, and she does not pursue that issue in her petition for review. Thus, we limit our discussion of the factual and procedural background of her asylum and restriction applications to information relevant to her claim that she was and will be persecuted based on her membership in the proposed particular social group of her partner's family.

persecution she suffered in the past and that she feared she and Victor would suffer if they returned to Guatemala. The Board found no clear error in the IJ's finding regarding the reason for the gang members' harassment of Ms. Manchame-Morales, agreeing that they "were motivated by money" and that her relationship to Luis "was a tangential rather than a central reason for the gang's interest in her." *Id.* at 4. The Board thus upheld the IJ's nexus determination, and because that determination was dispositive of Petitioners' asylum claim, the Board affirmed the IJ's denial of their asylum application.

Petitioners take issue with the Board's nexus determination, arguing that the Board erred by refusing to follow *Salgado-Sosa v. Sessions*, 882 F.3d 451 (4th Cir. 2018), in which the Fourth Circuit found that gang violence directed at a particular social group of family membership for financial purposes was a clear reason for their persecution and so provided a primary, not just a tangential nexus. *See id.* at 457-59 (holding that the Board "erred by focusing narrowly on the immediate trigger for [gang] assaults—greed or revenge—at the expense of" the petitioner's relationship to his stepfather, who refused to meet the gang's demands that he pay a "war tax" (quotations omitted)). But the Board is not required to follow an out-of-circuit decision. *See Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989). Instead, its established practice is to follow "a court's precedent in cases arising in that circuit." *Id.* We have neither adopted nor rejected the Fourth Circuit's test, and Petitioners do not argue that the Board failed to apply Tenth Circuit precedent.

The law in this circuit is that the persecution must be "*because of*" the protected status, *Rivera-Barrientos*, 666 F.3d at 647, and "cannot be . . . tangential . . . or subordinate to another reason," *Karki*, 715 F.3d at 800-01 (quotations omitted). The record supports the Board's findings that the gangs' primary motivation for harassing Ms. Manchame-Morales was to steal her money and that the fact that she got her money from Luis was tangential.

In their brief to this court, Petitioners point to Ms. Manchame-Morales's testimony that gang members harassed and attempted to steal from her because they knew Luis was sending her money, and that police did nothing about the fact that gangs terrorized and controlled the city. Petitioners contend this testimony establishes that gangs harassed and will continue to harass Ms. Manchame-Morales "simply because she was Luis's wife." Aplt. Br. at 13. We disagree. The evidence supports the Board's finding that the gangs harassed her and others to steal money.

The Board reasonably concluded that Petitioners failed to establish the required nexus between their membership in Luis's family and their claims of past and fear of future gang persecution in Guatemala. Their argument that substantial evidence does not support the Board's decision invites us to reweigh the evidence. We may not do so. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007). Also, we cannot say that a reasonable adjudicator would be compelled to reject the Board's conclusion. *See Rivera-Barrientos v. Holder*, 666 F.3d at 645. Finally,

8

Petitioners have not shown the Board misapplied our precedent. We thus affirm the Board's denial of Petitioners' asylum application. *See Sidabutar*, 503 F.3d at 1125.[5]

## B. *Restriction on Removal*

To qualify for restriction on removal, an applicant must show a "clear probability" of persecution on account of one of the statutorily protected grounds. *Rodas-Orellana*, 780 F.3d at 987 (quotations omitted). This is a higher burden of proof than the standard for asylum, which requires the applicant to prove only that such persecution is a "reasonable possibility." *Id.* (quotations omitted). Petitioners' inability to meet the asylum burden necessarily forecloses meeting the greater restriction burden. *See id.* We thus deny their challenge to the Board's finding that they are not eligible for restriction on removal.

## C. *CAT Relief*

The CAT "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki*, 715 F.3d at 806 (quotations omitted). The applicant has the burden to establish her eligibility for CAT relief. 8 C.F.R. § 208.16(c)(2). In determining whether an applicant has met her burden, the agency should consider "[e]vidence that the applicant could relocate to a part of the

---

[5] The Board assumed without deciding that Ms. Manchame-Morales partner's family is a cognizable particular social group. Because substantial evidence supports the Board's finding about the gang members' motives, we need not consider whether her proposed particular social group is cognizable.

country of removal where he or she is not likely to be tortured."

*Id.* § 208.16(c)(3)(ii).

The IJ denied Petitioners' application for CAT relief for two independent reasons. First, the IJ found Ms. Manchame-Morales had not shown the Guatemalan government "would acquiesce in her torture were she to return," ROA, Vol. 2 at 97, explaining that her belief that "there was a relationship between the police and the gang members" was insufficient to establish that the police "would acquiesce in her being tortured," *id.* at 98. Second, finding that she is "able-bodied" and noting that she had lived in two other areas of Guatemala, including when she struck out on her own, the IJ found "it would be reasonable for her to relocate from the area where she had been threatened by the gangs" to another part of Guatemala "different from where her father lives." *Id.* The IJ also noted that Luis "had been sending her money when she was in Guatemala" after he left the country, and found that he could continue to support her if she moved to another area of Guatemala. *Id.*

On appeal to the Board, Ms. Manchame-Morales took issue with the IJ's acquiescence determination, but she did not challenge the IJ's finding that she could avoid future persecution by relocating within Guatemala. Because she did not claim, much less establish, that the IJ's relocation finding was clearly erroneous, the Board agreed with the IJ's legal determination that, in light of her ability to relocate internally, she did not show it is more likely than not that she will face torture in Guatemala. *Id.* at 5. The Board thus upheld the IJ's denial of relief under the CAT

10

without addressing Petitioners' arguments challenging the IJ's acquiescence determination.

Now Petitioners challenge both the relocation and acquiescence determinations, arguing that neither is supported by substantial evidence. But we do not have jurisdiction to review her arguments. Petitioners' failure to raise the relocation issue in her appeal to the Board constitutes a failure to exhaust administrative remedies that deprives us of jurisdiction over that issue. *See Soberanes v. Comfort*, 388 F.3d 1305, 1308-09 (10th Cir. 2004). And we cannot review the IJ's acquiescence determination because it was not the basis for the Board's denial of Petitioners' application for CAT relief. *See Uanreroro*, 443 F.3d at 1204 (explaining that "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance").

## III. **CONCLUSION**

We deny the petition for review. We grant Petitioners' motion for leave to proceed without prepayment of fees and costs.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

11